Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAZZO PAZZO, INC.; and BERLEY ASSOCIATES, LTD,<br><br>Appellants,<br><br>v.<br><br>SPEEDWELL VENTURES, LLC; and 62-74 SPEEDWELL AVE. LLC,<br><br>Appellees. | Civil Action No.: 18-15361 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Appellants Pazzo Pazzo, Inc. ("Pazzo") and Berley Associates, Ltd. ("Berley") appeal several rulings of the Bankruptcy Court in this matter. Primarily, they challenge the Bankruptcy Court's decisions (i) that a commercial lease was validly terminated because Pazzo abandoned the lease, and (ii) that an option to purchase the underlying commercial property could not be revived as a fraudulent conveyance because its termination does not constitute a "transfer," as that term is defined in the Bankruptcy Code. (D.E. Nos. 21 ("Appellants Br.") & 24 ("Appellants Reply")). Appellees 62-74 Speedwell Ave. LLC ("62-74 Speedwell") and Speedwell Ventures, LLC ("Speedwell") oppose these appeals. (D.E. Nos. 22 ("62-74 Speedwell Opp.") & 23 ("Speedwell Opp.")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Bankr. P. 8019(b)(3). For the following reasons, the Court **AFFIRMS** the Bankruptcy Court's decisions.

1

I.  **BACKGROUND**[1]

This appeal concerns a dispute about real property located at 62-74 Speedwell Avenue in Morristown, New Jersey (the "Property"). Berley previously owned the Property and leased it to an affiliated entity, Pazzo, to operate an Italian restaurant. (Ex. M ("Lease")). Both Pazzo and Berley are operated by the same person, Lawrence S. Berger, the counsel of record for both Pazzo and Berley. After Berley filed a Chapter 11 bankruptcy petition in 2012, it sold the Property to one of its secured creditors, Lenox Hill Investors, LLC, as part of its reorganization. (Ex. II, Purchase Contract). Pursuant to the sale, Berley retained an option to repurchase the Property at a set price. (*Id.*). After Lenox Hill assigned its interest to Speedwell, Speedwell and Berley executed a separate option contract for the purchase of the Property. (Ex. O ("Option")).

A.  **The Lease, Option, and Termination of Both**

The Lease and the Option are materially interconnected. Pursuant to the Option, Speedwell could issue, under certain conditions, an "Option Notice"—that is, a demand that Berley exercise its right to repurchase the Property within thirty days of such notice. (Option § 2(b)). Speedwell could make such a demand, as relevant here, upon "termination" of the Lease. (*Id.*). And the Lease terminated ten days after Speedwell, as landlord, gave Pazzo, as tenant, a "Termination Notice." (Lease § 17(b)). Speedwell could do so, the Lease specifies, upon "an event of default" (*id.*), which includes, *inter alia*, (i) non-payment of rent and (ii) "abandonment, vacation or desertion of the" Property (*id.* § 17(a)). Thus, taken together, if Pazzo failed to pay rent or abandoned or vacated the Property, then Speedwell could (i) issue Pazzo a Termination Notice,

---

[1] The record on appeal consists of a two-volume joint appendix. (*See* D.E. Nos. 23-1–23-4). Any record citation beginning with "Ex." or "Exs." refers to an exhibit or exhibits in that joint appendix. The Court will also provide a description of the exhibit or exhibits to the extent context requires.

after which the Lease would terminate in ten days; and (ii) then issue Berley an Option Notice, giving Berley thirty days to exercise its right to repurchase the Property.

In or around October 2016, the restaurant was closed, according to Pazzo and Berley, for renovations. (Ex. I, March 11, 2019 Decision Regarding Abandonment ("Abandonment Decision"), at 10). While it was closed, Pazzo terminated its employees, stored inventory, and moved and organized furniture. (*Id.*). The restaurant was planned to reopen, Pazzo and Berley claimed to the Bankruptcy Court, in summer 2017, but that allegedly fell apart after the only remaining employee fell ill and could not continue managing the renovations or reopening of the restaurant. (*Id.*). Very little, if anything, had been done to reopen the restaurant as of April 2017. (*Id.* at 10–11).

Around April to June 2017, the parties disputed certain of their contractual rights. On April 14, 2017, Speedwell sent a Notice of Default to Pazzo and Berley for failure to (i) "provide insurance," (ii) "satisfy its Note obligation for March and April 2017," and (iii) "satisfy its Rent and Additional Rent obligation under the Lease." (Ex. R ("April 14 Notice")). The April 14 Notice also indicated that, "[i]f the defaults cited herein are not cured, within fifteen (15) days of the date of this notice, Speedwell . . . may," *inter alia*, terminate the Lease. (*Id.*). And upon termination, the April 14 Notice said, Speedwell would serve an Option Notice on Berley. (*Id.*). Speedwell did not exercise its right to terminate the Lease or serve an Option Notice until much later, on June 9, 2017. (Ex. S ("June 9 Notice")). The June 9 Notice sought to terminate the Lease for (i) "Pazzo's default by virtue of its abandonment, vacation or desertion of the Leasehold Premises," and (ii) the reasons stated in the April 14 Notice. (*Id.*). The June 9 Notice also served as an Option Notice, giving Berley thirty days after "the termination of the Lease" to repurchase the Property. (*Id.*).

3

Berley did not exercise its right to repurchase the Property, and on August 1, 2017, counsel for Speedwell sent a notice to Berley indicating that the Option had lapsed. (Ex. T). On August 18, 2017, the discharge of the Option was recorded in the Morris County Clerk's Office. (Ex. V). Thereafter, Speedwell sold the Property to 62-74 Speedwell. (Ex. A ¶ 60 & Ex. B ¶ 60).

### B. Relevant Proceedings Before the Bankruptcy Court

Months later, on February 23 and 28, 2018, Pazzo and Berley separately filed for relief pursuant to Chapter 11 of the Bankruptcy Code. (Exs. BB & LL). In their asset schedules, Pazzo listed the Lease and Berley listed the Option. (Exs. CC & LL). On May 2, 2018, Speedwell filed a complaint seeking a declaratory judgment that neither the Lease nor the Option belonged to the bankruptcy estates. (Ex. A at 18). On June 21, 2018, Pazzo and Berley filed an answer and countercomplaint against Speedwell, and a third-party complaint against 62-74 Speedwell. (Ex. B). The countercomplaint and third-party complaint raise two identical counts for relief that are relevant to the instant appeal. Count one sought, *inter alia*, to "set[] aside the transfer and termination of the Option as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B)." (*Id.* at 13 & 19). Count two sought, *inter alia*, a declaration that the Lease "[wa]s an executory contract or unexpired lease of the debtor that Pazzo . . . may assume or reject pursuant to 11 U.S.C. § 365." (*Id.* at 15 & 20).

#### *i. Termination of the Lease for Nonpayment of Rent*

In ruling on motions for summary judgment, the Bankruptcy Court held, on October 10, 2018, that the Lease was not validly terminated for nonpayment of rent because "a judgment of possession was not entered against Pazzo" and, consequently, Pazzo "retain[ed] the right under New Jersey law (N.J.S.A. 2A:18-55) to pay outstanding rent and preserve the Lease." (Ex. X ("Nonpayment of Rent Decision") at 13). The Bankruptcy Court further held that, in order to

assume the Lease pursuant to 11 U.S.C. § 365(d)(3), "Pazzo must promptly pay all post-petition rent due to Speedwell" within 30 days. (*Id.* at 13).

### ii. Assumption of the Lease

Because Pazzo failed to assume the Lease as ordered, the Bankruptcy Court denied Pazzo's motion to assume the Lease on December 7, 2018. (Ex. Y).

Neither ruling, however, addressed whether the Lease was validly terminated for abandonment or vacation and, if so, whether Pazzo could void termination of the Option as a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(1)(B).

### iii. Termination of the Lease for Abandonment or Vacation

After holding a two-and-a-half-day bench trial, the Bankruptcy Court held that the Lease was validly terminated for abandonment and vacation (Ex. H ("Abandonment Order")), placing its reasons on the record on March 11, 2019. The timeline of events, according to the Bankruptcy Court, was critical. The Bankruptcy Court found that Pazzo did not abandon or vacate the Lease prior to the April 17 Notice. (Abandonment Decision at 12). The Bankruptcy Court explained that, while very little had been done to reopen the restaurant, it was significant that Mr. Berger had prepaid or personally guaranteed a significant portion of the rent and taxes on the Property and had pursued certain business opportunities concerning the Property and Lease. (*Id.* at 10–12).

But "things changed" after Pazzo received the April 14 Notice. (*Id.* at 12). The Bankruptcy Court relied heavily on the fact that, "during the May [2017] through February [2018] period, there were no written responses by Pazzo to the various default notices"—specifically, the April 14 Notice and the June 9 Notice. (*Id.* at 13). That was important, the Bankruptcy Court said, because Pazzo "knew that Speedwell considered the [L]ease and the [O]ption to be terminated." (*Id.*). And Pazzo's silence was more significant when the Option expired because that "was directly linked"

5

to the Lease terminating and because removing the Option "from the Morris County Clerk's record meant that the world would know that Speedwell was now the owner of this property and can do with it what it wanted to." (*Id.* at 14). The Bankruptcy Court also noted several other factors in favor of abandonment and vacation. These factors include: (i) Mr. Berger did not make any payments on a tax note executed in February 2017; (ii) taxes for the first quarter of 2017 were not paid; (iii) employees had not been rehired since October 2016; (iv) no one was hired to replace the only remaining employee after she had fallen ill; (v) there were various maintenance issues at the Property, including excessive garbage, rodents, graffiti, and various structural issues, such as disrepair of the roof, floor, and beams; (vi) the restaurant's website had been suspended; (vii) there was no security system at the Property; (viii) utility bills had not been paid since the middle of 2017; and (ix) the liquor license had not been renewed, and the food license lapsed. (*Id.* at 13–16). No real "progress," the Bankruptcy Court said, was made "towards reopening, or preserving the tenancy." (*Id.* at 16). The Bankruptcy Court noted that the evidence it listed was "not . . . exhaustive," and that "the record [wa]s full o[f] many examples . . . that support intent to vacate/abandon the property" as of June 9, 2017. (*Id.*).

### *iv. Termination of the Option as a Fraudulent Transfer*

On April 24, 2019, the Bankruptcy Court held that the Option was not recoverable as a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B). (Ex. K ("Transfer Decision") at 6–8). Neither side disputes the Bankruptcy Court's finding that a necessary condition under § 548(a)(1)(B) is that the Option's expiration must be a "transfer" within the meaning the Bankruptcy Code. The parties dispute, however, the finding that a pre-petition termination of an option to buy is not a "transfer." While noting a split in authority on this issue, the Bankruptcy Court found that a party who "loses property rights by the operation of the terms of a valid

6

contract" should be treated as though the party's "property rights d[id] not exist—because their existence depends on compliance with the terms of the contract." (*Id.* at 6). Applying that principle, the Bankruptcy Court explained that "Berley knew what it had to do to preserve the Option," that "Speedwell gave ample notice of its intent to terminate the Option," and that "Berley did nothing" to exercise its right to repurchase the Property. (*Id.* at 8). Consequently, the termination of the Option was not a transfer. (*Id.*).

### C. The Instant Appeals

The parties appeal the four rulings of the Bankruptcy Court described above, which have been consolidated by the Court under the instant docket number. (D.E. No. 18). First, Speedwell appeals the Bankruptcy Court's October 10, 2018 decision that the Lease was not validly terminated for non-payment of rent. (18-cv-15361, D.E. No. 1). Second, Pazzo appeals the Bankruptcy Court's December 7, 2018 decision that Pazzo failed to assume the Lease as required under 11 U.S.C. § 365(d)(3). (18-cv-17576, D.E. No. 1). Speedwell cross-appeals that order, too. (19-cv-0164, D.E. No. 1). Third, Pazzo and Berley appeal the Bankruptcy Court's March 13, 2019 decision that the Lease was validly terminated due to abandonment and vacation. (19-cv-9035, D.E. No. 1). Fourth and finally, Pazzo and Berley appeal the Bankruptcy Court's April 24, 2019 decision that the Option's expiration was not a transfer within the meaning of the Bankruptcy Code. (19-cv-12054, D.E. No. 1). Because a decision on the latter two appeals—concerning the issues of abandonment and vacation and fraudulent transfer—may moot the former appeals, the parties briefed the potentially dispositive appeals first at the Court's request.

## II. STANDARD OF REVIEW[2]

While sitting as an appellate court, the district court must review a bankruptcy court's factual findings for clear error and legal determinations *de novo*. *See In re HomeBanc Mortg. Corp.*, 945 F.3d 801, 810 (3d Cir. 2019). Mixed questions of law and fact are sometimes more complicated. Those types of questions may be reviewed either *de novo* or for clear error—depending on "the nature of the mixed question" and "which kind of court (bankruptcy or appellate) is better suited to resolve it[.]" *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018).

Here, the only mixed question before the Court concerns the issue of abandonment and vacation, and the Court will review the Bankruptcy Court's decision on those issues for clear error. Indeed, both parties have litigated those issues under the premise that the Bankruptcy Court's determination should be reviewed for clear error. Thus, the Court will only reverse the Bankruptcy Court's decision if "it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Shire US Inc. v. Barr Lab'ys, Inc.*, 329 F.3d 348, 355 (3d Cir. 2003) (quoting *Am. Home Prod. Corp. v. Barr Lab'ys, Inc.*, 834 F.2d 368, 370–71 (3d Cir. 1987)). The question whether termination of the Option constitutes a transfer is a purely legal question reviewed *de novo*.

## III. DISCUSSION

The Court will decide, first, whether the Bankruptcy Court committed clear error in finding that Pazzo abandoned or vacated the Lease and, second, whether the Bankruptcy Court erred in finding termination of the Option fell outside the definition of "transfer" in the Bankruptcy Code. Other issues raised by Pazzo and Berley are addressed last.

---

[2] This Court has jurisdiction over the instant appeals pursuant to 28 U.S.C. § 158(a).

A.   **<u>Abandonment or Vacation</u>**

As noted above, § 17(a) of the Lease defines "an event of default" to include "abandonment, vacation or desertion of the" Property. The definition of "abandonment" or "vacation" presents an issue of contract interpretation. In interpreting the terms of a contract, "[a] court's role is to consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'" *Sachau v. Sachau*, 17 A.3d 793, 796 (N.J. 2011) (quoting *Atl. N. Airlines, Inc. v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953)).

While the proper interpretation of a contract presents a question of law, *Capparelli v. Lopatin*, 212 A.3d 979, 992 (N.J. Super. App. Div. 2019), Pazzo and Berley do not claim the Bankruptcy Court erred in defining the terms "abandonment" and "vacation," as those terms are used in the Lease.

The Bankruptcy Court, relying on *Liqui-Box Corp. v. Estate of Elkman*, 570 A.2d 472, 476 (N.J. Super. App. Div. 1990), defined "abandonment" as, an act accompanied by the intent to abandon. (Abandonment Decision at 19). Relying on the same case, the Bankruptcy Court defined "vacation" as, to deprive the premises of contents of substantial value. (*Id.*).

Pazzo and Berley address the issue of vacation for the first time in their reply brief, despite acknowledging that "vacation and/or abandonment are different concepts." (Appellants Reply at 10). And as 62-74 Speedwell and Speedwell point out, the Bankruptcy Court found that Pazzo vacated the Property within the meaning of § 17(a) of the Lease. (62-74 Speedwell Opp. at 28–33; Speedwell Opp. at 23–24). The Court could thus, on this basis alone, affirm the Bankruptcy Court's decision that Speedwell validly terminated the Lease. *See In re Revstone Indus. LLC*, 690

F. App'x 88, 90 (3d Cir. 2017) (explaining that "arguments raised for the first time in a reply brief are waived on appeal" (citing *Prometheus Radio Project v. FCC*, 824 F.3d 33, 53 (3d Cir. 2016))).

But out of an abundance of caution, the Court will address Pazzo and Berley's arguments concerning abandonment. The main thrust of their argument is that the Bankruptcy Court committed clear error by relying on two sets of evidence. (Appellants Br. at 26). The first set concerns events that occurred after the June 9 Notice, and Pazzo and Berley focus on that evidence because abandonment must have occurred, i.e., Pazzo must have had the intent to abandon, *before* Speedwell could issue the June 9 Notice. (*Id.*). The second set concerns events that took place before, but continued after, the April 14 Notice. (*Id.*). And Pazzo and Berley focus on that evidence because the Bankruptcy Court found that those same events did not support a finding of abandonment as of the April 14 Notice. (*Id.*). According to Pazzo and Berley, the Bankruptcy Court could only look to events that had taken place for the first time within the "crucial 40 day period" between the April 14 Notice and the June 9 Notice. (*Id.*).

The Court cannot agree. Pazzo and Berley essentially suggest that a factfinder cannot look to the totality of the evidence. They provide no support for that proposition.

Moreover, as for the first set of evidence, courts have affirmed, in various other contexts, that factfinders may look to subsequent conduct to inform previous intentions. *See United States v. Green*, 201 F.3d 251, 256 (3d Cir. 2000) (explaining that, under Pennsylvania law, a judge need not wear "blinders" and may consider "subsequent conduct" when inferring prior intent); *In re Dawley*, No. 01-32215, 2005 WL 2077074, at *7 (Bankr. E.D. Pa. Aug. 10, 2005) (same); *Athlone Indus., Inc. v. Advance Mach. Co.*, No. 78-0846, 1987 WL 7671, at *5 (D.N.J. Mar. 10, 1987) (explaining that, under New Jersey law, a factfinder may consider "subsequent conduct" when determining a prior "intent to indemnify"); *Colson v. Bertsch*, 586 F. Supp. 1289, 1295 n.7 (D.N.J.

1984) (explaining that, while "the determination of the purchaser's intent should be judged as of the date of sale," a factfinder may consider "subsequent conduct" as "relevant as to such intent"); *Loizeaux Builders Supply Co. v. Donald B. Ludwig Co.*, 366 A.2d 721, 724 (N.J. Super. App. Div. 1976) (explaining that the "intent of the parties" may be determined with reference to their "subsequent conduct"); *Morgan v. Pfau*, No. A-0678-13T1, 2014 WL 6861277, at *4 (N.J. Super. App. Div. Dec. 8, 2014) (same). Pazzo and Berley have not provided any reason why, in this context, the Bankruptcy Court could not similarly rely on Mr. Berger's subsequent conduct to inform his previous intent to abandon. It was thus entirely appropriate for the Bankruptcy Court to consider Mr. Berger's silence and failure to seriously challenge the recording of the Option as evidence of his previous intent to abandon. (Abandonment Decision at 13–14).

As for the second set of evidence, Pazzo and Berley have not cited any authority for the proposition that the Bankruptcy Court could not weigh a person's actions differently at different points in time. It is true, to be sure, that the Bankruptcy Court did not find that some of Pazzo's failures—e.g., to make certain payments, to prepare the restaurant for reopening, or to keep the Property in good condition—supported an intent to abandon as of the April 14 Notice. But that does not mean the Bankruptcy Court was fixed to weighing those actions and inactions the same way at different points in time. The Bankruptcy Court could consider the *forty-day continuation* of those failures to support an intent to abandon, especially when combined with the facts concerning Mr. Berger's silence after the June 9 Notice. For example, while Pazzo, as of the April 14 Notice, missed payments on a tax note executed in February 2017, the Bankruptcy Court could reasonably find that the continued failure to make such payments supported an intent to abandon. The same is true for the continued failure to pay other taxes, to hire employees, to renovate the restaurant or to reopen it, to cure maintenance and health and safety issues at the Property, to renew

11

the restaurant's website, to reinstall a security system, and to pay utility bills. (Abandonment Decision at 13–16). Significantly, Pazzo was supposed to operate a restaurant, and there is no indication that, after it lost its liquor license and food license, it attempted to recover those licenses—much less after Speedwell issued the April 14 Notice. (*Id.* at 15). As the Bankruptcy Court said, no real "progress" had been made "towards reopening, or preserving the tenancy." (*Id.* at 16).

The Court thus cannot say that the Bankruptcy Court's ruling on abandonment was "completely devoid of a credible evidentiary basis or b[ore] no rational relationship to the supporting data." *Shire US Inc.*, 329 F.3d at 355. Indeed, as laid out above, the Bankruptcy Court noted numerous factors in favor of abandonment. Consequently, the Court affirms the Bankruptcy Court's March 13, 2019 decision that Pazzo abandoned the Lease.

### B. Fraudulent Transfer

Berley seeks to void termination of the Option as a fraudulent conveyance pursuant 11 U.S.C. § 548(a)(1)(B). "Section 548(a)(1) allows a trustee to avoid any transfer of the debtor's interest in property made within [two] year[s] before the filing of a bankruptcy petition if the transfer was the result of actual or constructive fraud." *In re Fruehauf Trailer Corp.*, 444 F.3d 203, 210 (3d Cir. 2006). Section 548(a)(1) is a narrow exception to the rule that "[t]he estate cannot possess anything more than the debtor itself did outside bankruptcy." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019). "The most notable example [are] . . . something-for-nothing transfers that deplete the estate (and so cheat creditors) on the eve of bankruptcy." *Id.* Here, the Court is concerned with a fraudulent conveyance for constructive fraud, which falls under § 548(a)(1)(B) and requires (i) that "the debtor had an interest in property"; (ii) that "a transfer of that interest occurred within [two] year[s] of the bankruptcy filing"; (iii) that

"the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer"; and (iv) that "the transfer resulted in no value for the debtor or the value received was not 'reasonably equivalent' to the value of the relinquished property interest." *Fruehauf Trailer Corp.*, 444 F.3d at 210–11.

As noted above, the Bankruptcy Court held against Berley on the second element—explaining that the termination of the Option was not a transfer. 11 U.S.C. § 101(54)(D) defines the term "transfer" as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of *disposing of* or *parting with*--(i) property; or (ii) an interest in property." § 101(54)(D) (emphasis added). Applying that definition and case law interpreting it, the Bankruptcy Court explained that where, as here, a party "loses property rights by the operation of the terms of a valid contract," there is no transfer because the party should be treated as though his or her "property rights d[id] not exist—because their existence depends on compliance with the terms of the contract." (Transfer Decision at 6). The Bankruptcy Court further explained that "Berley knew what it had to do to preserve the Option," that "Speedwell gave ample notice of its intent to terminate the Option," and that "Berley did nothing" to exercise its right to purchase the Property. (*Id.* at 8). It followed, the Bankruptcy Court concluded, that the termination of the Option was not a transfer. (*Id.*).

Pazzo and Berley argue that the plain meaning of the term "transfer" holds otherwise. (Appellants Br. at 41). Though they do not themselves dissect § 101(54)(D) as applied to the facts of this case, they ask the Court to adopt the interpretation of *In re White*, 559 B.R. 787 (Bankr. N.D. Ga. 2016), which held that "where a lessee has a clearly identifiable possessory interest under a lease, the termination of the lease results in a transfer of the lessee's interest back to the lessor." *Id.* at 798. The same was true, *White* went on, for a termination of a future ownership interest. *Id.*

However, *White* is factually inapposite, so the Court need not consider whether its interpretation is correct.[3] In *White*, the court was concerned with a lease agreement and a future contingent right to ownership that *terminated early* based on the agreement of the landlord and the tenant. *Id.* at 793–94. Meanwhile, Pazzo and Berley are not seeking to void the termination of the Lease because the Lease ended early.[4] Instead, they are seeking to void the termination of the Option—which expired naturally.

That is significant in light of the nature of the property interest Berley retained through the Option *and* the Bankruptcy Code's definition of the term "transfer."

Berley's interest in the Property was the *option to buy*—a contingent future interest[5]—and not actual ownership of the Property. *See Bright v. Forest Hill Park Dev. Co.*, 133 N.J. Eq. 170, 171, 31 A.2d 190 (Ch. 1943) ("No estate in the land passes under an option to purchase, the optionee taking only an inchoate right to acquire the land which, pending the option period, will be protected in equity. The right of property does not vest in an optionee until he has made his election under the option."); *see also Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 141 (3d Cir. 2009) ("Toll Brothers is neither a lessee nor a contract purchaser. It has only an option to buy. Although that option does give Toll Brothers 'an inchoate right to acquire the land which . . . [is] protected in equity,' Toll Brothers does not have any present interest in the Readington Properties

---

[3] Though the parties dedicated their briefing to this issue, deciding it has broader implications. Indeed, *White*'s interpretation of § 101(54)(D), as endorsed by Berley and Pazzo, has the tendency to upset expectation interests, leaving contracting parties in limbo for two years after a contract terminated for material breach. At the same time, if a contract terminates naturally but early as a result of material breach, that breach might be akin to "indirectly" and "involuntarily" disposing of or parting with property or an interest in property. The Court's holding does not address this issue.

[4] In their counterclaim and third-party complaint, Pazzo and Berley sought to "set[] aside the transfer and termination of the *Option* as fraudulent pursuant to 11 U.S.C. § 548(a)(1)(B)." (Ex. B at 13 & 19 (emphasis added)). And they want to recover "the *Option*." (*Id.* (emphasis added)). They did not seek the same of the Lease. And the Option expired naturally—as a result of Berley's failure to exercise its right to repurchase the Property—not as a result of material breach or assignment.

[5] The Bankruptcy Code protects contingent future interests. *See In re Majestic Star Casino, LLC*, 716 F.3d 736, 750 (3d Cir. 2013).

14

parcel." (quoting *Bright*, 31 A.2d at 198)).[6] Therefore, to constitute a transfer, Berley must have "dispos[ed] of or part[ed] with" *the option to buy the Property*. *See* § 101(54)(D).

But by failing to exercise its rights, Berley did not *dispose of* or *part with* the option to buy the Property. As phrasal verbs, "dispose of" and "part with" share similar definitions. The phrasal verb "dispose of," in this context, means "to transfer into new hands or to the control of someone else (as by selling or bargaining away)"; "to get rid of : throw away." Webster's Third International Dictionary 654 (1993); *see also* The American Heritage Dictionary of the English Language 521 (5th ed. 2018) (defining the phrasal verb "dispose of," in this context, as "[t]o give or transfer to someone else, especially permanently"; "[t]o get rid of; throw out"). And the verb "part," as used with "with," means "to relinquish possession or control of something." Webster's Third International Dictionary 1645 (1993); *see also* The American Heritage Dictionary of the English Language 1284 (5th ed. 2018) (defining the phrasal verb "part with," in this context, as "[t]o give up or let go of; relinquish").

Here, Berley simply failed to exercise its right to purchase the Property pursuant to the Option. Berley *retained* its contingent future interest—the option to buy the Property. Berley did not transfer it into new hands or to the control of another, get rid of it, throw it away, relinquish possession or control of it, or give it up or let it go. Although Berley could have done those things through assignment (*see* Option § 12 ("Buyer may freely assign its rights under this Contract to third parties of its choosing.")), the record indicates that Berley did not do that. And Berley's failure to do so does not mean it transferred that interest. Just the opposite. Berley retained its contingent future property interest until it no longer existed; Berley simply failed to convert that interest into something entirely different—into either ownership through purchase or money

---

[6] "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).

through assignment. Said another way, Berley failed to pursue a business opportunity. That failure to convert an interest in property into something else entirely does not constitute a transfer within the meaning of § 101(54)(D).[7]

This conclusion comports with common usage of the phrasal verbs "dispose of" and "part with." Consider, for example, a person who has temporary rights to operate a rental vehicle. It would be odd for the person to return the vehicle outside the rental time frame and later say he "disposed of" or "parted with" his right to operate the vehicle. In contrast, if the person returned the car within the rental period, it would not be unusual to suggest he parted with, or disposed of, his then-remaining possessory interest in the vehicle. The Court thus agrees with the Seventh Circuit that "[p]ossession of expired rights is the equivalent of the possession of no rights." *In re Wey*, 854 F.2d 196, 199 (7th Cir. 1988).[8] A person cannot "dispose of" or "part with" expired rights. (Albeit, the termination of rights that result from a material breach might be different, because the material breach occurred before the rights expired.)

Finally, this interpretation is consistent with the overall statutory scheme of the Bankruptcy Code. Ordinarily, "[t]he estate cannot possess anything more than the debtor itself did outside bankruptcy." *Mission Prod. Holdings, Inc.*, 139 S. Ct. at 1663. Section 548(a)(1)(B) is a narrow exception to that rule, allowing a trustee to avoid transfers that may have cheated the estate's

---

[7] Binding Third Circuit precedent is not to the contrary. *See Fruehauf Trailer Corp.*, 444 F.3d at 212 ("Because ERISA prohibited Fruehauf from decreasing or revoking those benefits, the District Court correctly concluded that the irrevocable allocation of part of the Company's future interest in the pension plan's surplus in the form of increased benefits was a 'transfer' for purposes of the Bankruptcy Code."); *In re Tops Appliance City, Inc.*, 372 F.3d 510, 516 n.2 (3d Cir. 2004) ("[T]here is no doubt that the term transfer includes the granting of a security interest."); *In re Yuhas*, 104 F.3d 612, 614–15 (3d Cir. 1997), *as amended* (Feb. 26, 1997) ("Any procedure by which funds in an IRA might be reached to satisfy the 'claims of creditors' (N.J.S.A. § 25:2–1(b)) would seem to fall within this broad definition and thus constitute a 'transfer.'"); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 646 (3d Cir. 1991), *as amended* (Oct. 28, 1991) (leveraged buyout constitutes a transfer); *cf. Majestic Star Casino, LLC*, 716 F.3d at 762 n.27 ("However, both §§ 549 and 550 presume that a 'transfer' requires that there be a 'transferee' that receives the property interest conveyed from the debtor.").

[8] The Court takes no possession on the Seventh Circuit's application of that general statement.

creditors. Indeed, a trustee's avoidance powers "can be invoked in only narrow circumstances." *Id.* at 1663. And allowing a trustee to use these powers for property interests that expired and vanished on their own terms, as opposed to as a result of something the debtor or someone else did, "would subvert everything the Code does to keep avoidances cabined—so they do not threaten the rule that the estate can take only what the debtor possessed before filing." *Id.* Indeed, there are endless missed business opportunities that would fall within § 101(54)(D)'s definition of transfer if the Court were to hold there was a transfer in this case. The implication of such a ruling would be to hold that a failure to accept *any* offer to buy property is a transfer. Such missed business opportunities could then, in turn, fall within the ambit of a trustee's avoidance powers. That is a result Congress surely did not intend.

In sum, the Bankruptcy Court did not err in holding that Berley did not transfer the Option by failing to exercise its rights.[9]

### C. Other Issues

In their opening brief, Pazzo and Berley raise several other issues challenging the Bankruptcy Court's decisions. None is persuasive.

#### i. *Final Judgment of Possession*

Pazzo and Berley argue that the Bankruptcy Court erred in finding that a judgment of possession is not required to terminate a lease for abandonment. (Appellants Br. at 37–39). In support, they appear to rely on the fact that the Bankruptcy Court held that the Lease was not validly terminated for nonpayment of rent because, citing N.J.S.A. § 2A:18-55, "a judgment of

---

[9] One might wonder whether defaulting on the Lease "indirectly" disposed of or parted with the Option. Whatever the term "indirectly" means in § 101(54)—the parties do not address it—it cannot reach so far as to cover an instance where, as here, there were several intervening events. Indeed, a default on the Lease does not cause the Option to terminate *unless* Speedwell issued both a Termination Notice and an Option Notice, and unless Berley thereafter declined to purchase the Property or assign the Option despite having the capital to purchase the Property or a willing and able buyer to whom to assign the Option.

possession was not entered against Pazzo." (Nonpayment of Rent Decision at 13). But even if N.J.S.A. § 2A:18-55 demands a judgment of possession to terminate a lease for nonpayment of rent, that provision is limited, as 62-74 Speedwell and Speedwell point out, to termination for *nonpayment of rent* and does not apply to termination for abandonment. (62-74 Speedwell Opp. at 38–40; Speedwell Opp. at 28–30). Indeed, § 2A:18-55 gives a tenant the right to cure unpaid rent "in actions instituted under [§ 2A:18-53(b)]." And § 2A:18-53(b) applies "[w]here such person shall hold over *after a default in the payment of rent*, pursuant to the agreement under which the premises are held" (emphasis added).

### ii. *Transfer of the Lease*

Pazzo and Berley argue that the Bankruptcy Court erred in declining to find that the *Lease* was transferred as a result of abandonment. (Appellants Br. at 50). However, as explained above, and as 62-74 Speedwell points out, Pazzo and Berley did not seek to void the Lease termination under § 548(a)(1)(B). (62-74 Speedwell Opp. at 49–50). Instead, they sought only to void the Option's expiration. (Ex. B at 13 & 19 (emphasis added)). The proper channel to amend their complaint is with the Bankruptcy Court in the first instance, not this Court on appeal. *See* Fed. R. Bankr. P. 7015 (incorporating Fed. R. Civ. P. 15).

### iii. *The Option Lapsing*

Pazzo and Berley argue that the Bankruptcy Court erred in finding that the Option lapsed prior to the filing of their two underlying bankruptcy petitions, claiming that the issue was never before the Bankruptcy Court. (Appellants Br. at 51–55). In support, they point to the Bankruptcy Court's March 11 decision regarding abandonment, in which, at the end of the hearing, the Bankruptcy Court indicated it was not yet ruling on the issue concerning the Option. (*Id.* at 51 (citing Abandonment Decision at 22:7)).

For two reasons, the Court does not agree that the issue was not before the Bankruptcy Court. First, Speedwell argues that the issue was briefed *before* the March 11 hearing (Speedwell Opp. at 44–45), and Pazzo and Berley do not clearly dispute that. Instead, they repeat what the Bankruptcy Court indicated in its March 11 decision—that it was not yet ruling on the issue. (Appellants Reply at 23). Pazzo and Berley have provided no support for the proposition they were entitled to another round of briefing.

Second, the Bankruptcy Court specifically addressed, and rejected, the two arguments Pazzo and Berley now raise on appeal challenging the termination of the Option.

*Argument One*: Pazzo and Berley claim that Speedwell did not issue a valid Option Notice because (i) a valid Option Notice must proceed the termination of both the Lease and Pazzo's tenancy and (ii) Pazzo's tenancy terminates only upon a judgment of possession. (Appellants Br. at 52–54). The Bankruptcy Court specifically noted that "Mr. Berger made [an argument] relat[ing] to the termination of the tenancy," and the Bankruptcy Court found that "once the [L]ease was terminated so was the tenancy." (Abandonment Decision at 21:15–22). Moreover, as explained above, New Jersey law does not require a judgment of possession to terminate a tenancy for abandonment. *See* N.J.S.A. §§ 2A:18-53(b) & 2A:18-55.

*Argument Two*: Pazzo and Berley argue that the Option Notice was invalid because Pazzo did not intend to abandon the Lease before it received the June 9 Notice. (Appellants Br. at 54–55). However, the Bankruptcy Court found that Pazzo abandoned the Lease "as of the June 9th, 2017, at the latest." (Abandonment Decision at 16). And the Bankruptcy Court made that finding after holding a two-and-a-half-day bench trial on the issue. (Abandonment Order (noting that it held a trial on March 7, 8, and 11, 2019, regarding whether the Lease was terminated "due to vacation or abandonment")). The issue was thus clearly before the Bankruptcy Court, and Pazzo

19

had a fair opportunity to, and did, raise its arguments concerning abandonment. Finally, as discussed above, the Bankruptcy Court did not clearly err in finding that the Lease was terminated as of the June 9 Notice.[10]

## IV. CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the Bankruptcy Court's decisions dated March 13, 2019 and April 24, 2019 holding that the Lease was validly terminated for abandonment and vacation and that the Option could not be recovered as a fraudulent conveyance. The remaining appeals consolidated under this docket are **DISMISSED** as moot. An appropriate Order accompanies this Opinion.

Dated: June 18, 2021

*/s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[10] For the first time in their reply brief, Pazzo and Berley argue that the Option Notice was invalid because it was issued at the same time as the *valid* Termination Notice—even though Speedwell could issue an Option Notice only after the Lease terminated, which could occur *at the earliest ten days after* Speedwell issued a Termination Notice. (Appellants Reply at 24). Though this claim may be tenable, the Court will not consider it on appeal because it was raised for the first time in reply. *See Revstone Indus. LLC*, 690 F. App'x at 90 (explaining that "arguments raised for the first time in a reply brief are waived on appeal" (citing *Prometheus Radio Project*, 824 F.3d at 53)).